United States District Court
Southern District of Texas
**ENTERED**
July 31, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| THE GALVESTON-TEXAS CITY PILOTS ASSOCIATION, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00160 |
| | § | |
| HOUSTON PILOTS, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before me is a motion to remand filed by Plaintiff Galveston-Texas City Pilots Association ("GalTex"). *See* Dkt. 4. Having reviewed the briefing and applicable law, and having heard extensive oral argument, I find that this court lacks subject matter jurisdiction. Thus, I recommend the motion to remand be granted and this matter returned to the 122nd District Court of Galveston County.

**BACKGROUND**

GalTex is an unincorporated association consisting of 16 compulsory pilots, all Texas citizens, licensed to conduct pilotage to the Ports of Galveston County pursuant to Chapter 67 of the Texas Transportation Code, "The Galveston Act." Defendant Houston Pilots is an unincorporated association of pilots, also Texas citizens, licensed to conduct pilotage to the Ports of Harris County pursuant to Chapter 66 of the Texas Transportation Code, "The Houston Act." A maritime pilot is a specially trained and licensed mariner who boards a ship to help guide it safely through dangerous or congested waters—usually near ports, harbors, or narrow channels. *See* Tex. Transp. Code §§ 61.002(4), 66.002(6), 67.002(6).

With a few exceptions, federal law leaves it to the states to regulate pilotage "in the bays, rivers, harbors, and ports of the United States." 46 U.S.C. § 8501(a). In Texas, "compulsory pilotage" is required for foreign-flagged vessels and U.S. vessels in foreign trade of 20 gross tons or more "when the vessel is under way or

otherwise moving on a river, bay, harbor, or port in [Texas].” Tex. Transp. Code § 61.003(a). Coastwise vessels—that is, vessels transporting goods along a coast within the territorial waters of the United States—are, however, exempt from Texas’s compulsory pilotage scheme. *Id.* § 61.003(a)(1). Rather, coastwise vessels are required to use the services of a federally licensed pilot. *See* 46 U.S.C. § 8502(a). While a pilot may possess both a federal pilot license and a state pilot license—as is the case with the Houston Pilots—the requirement for a pilot with a particular type of license depends on the vessel and the circumstance.

At issue in this case is which pilots—Houston Pilots or Galveston-Texas City Pilots—are authorized to provide compulsory pilotage services in the Bolivar Roads Anchorage, a wide waterway between Galveston Island and Bolivar Peninsula that connects the Gulf of Mexico and Galveston Bay. The Bolivar Roads Anchorage is located within the Galveston Harbor. *See* 33 C.F.R. § 110.197. On April 28, 2025, GalTex instituted this action against Houston Pilots in the 122nd Judicial District Court of Galveston County, Cause Number 25-CV-0697. GalTex seeks a judgment declaring:

> a. That Bolivar Roads is a “Port” as defined by Texas Transportation Code Chapter 61, and a “Galveston County Port” as defined by Texas Transportation Code Chapter 67.
>
> b. That the Houston Pilots Licensing and Regulatory Act. TEX. TRANSP. CODE § 66.001 has no effect over a Galveston County Port.
>
> c. That the Houston Pilots are not licensed by Chapter 67 to conduct pilotage service to Bolivar Roads.
>
> d. The Houston Pilots may not perform Bolivar Roads jobs;
>
> e. That all Bolivar Roads jobs performed by the Houston Pilots within the statute of limitations dating back from the date of this Petition’s filing were jobs the Galveston-Texas City Pilots were lawfully entitled to receive under Chapter 67 of the Texas Transportation Code;
>
> f. That the Houston Tariff is inapplicable to Bolivar Roads jobs; and,
>
> g. That the Galveston-Texas City Pilots are entitled to damages due to the trespass committed in violation of Chapter 67 of the Texas Transportation Code.

Dtk. 1-2 at 9. GalTex also asserts claims against Houston Pilots for trespass and money had and received. *See id.* at 10.

Houston Pilots removed the action to this court on May 27, 2025, arguing that (1) GalTex's well-pleaded complaint raises a substantial federal question; and (2) the case is within this court's original admiralty jurisdiction. *See* Dkt. 1 at 3–4. GalTex has moved to remand. *See* Dkts. 4, 14. In reviewing the parties' briefing on the motion to remand, my review was "frustrated by the uncertain meaning of the term 'Bolivar Roads Jobs' as used in the Original Petition and Request for Declaratory Judgment by [GalTex]." Dkt. 22 at 1. To clarify the matter, I ordered "GalTex to provide a more definite statement of what is meant by the term 'Bolivar Roads Jobs' as used in its initial pleading." *Id.* at 2. GalTex promptly provided a more definite statement, which is now part of its well-pleaded complaint. *See* Dkt. 23. With that, I turn to the motion to remand.

## LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction" and in favor of remand. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

The two primary sources of federal district courts' original jurisdiction are diversity jurisdiction and federal question jurisdiction. *See* U.S. Const., art. III, § 2, cl. 1; 28 U.S.C. §§ 1331–32. Diversity jurisdiction allows district courts to decide cases that are between citizens of different states when the amount in controversy

involves more than $75,000. *See* 28 U.S.C. § 1332(a).[1] Federal question jurisdiction exists where a claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. An action arises under federal law "only in those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (citation modified). The "test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties" is this: "does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308, 314 (2005). Federal courts must presume "that a cause lies outside this limited jurisdiction" unless the party asserting federal jurisdiction carries its burden to establish otherwise. *Kokkonen*, 511 U.S. at 377.

Finally, a third source of original jurisdiction is that of admiralty or maritime jurisdiction. "Except as otherwise expressly provided by Act of Congress," a defendant in state court may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Congress has given district courts original jurisdiction over civil cases "of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Whether this

---

[1] Diversity jurisdiction is inapplicable to this case because all the parties are Texas citizens.

case falls within this court's admiralty or maritime jurisdiction and whether it is removable under § 1441 are discussed in greater detail below.

## ANALYSIS

### A. FEDERAL QUESTION JURISDICTION

It is undisputed that no federal law creates any cause of action in GalTex's pleading. Rather, Houston Pilots contend that GalTex's request for declaratory judgment raises a substantial federal question because GalTex "is attempting to deny Houston Pilots' their pilotage rights under their federal pilot license to pilot vessels into a federal anchorage by requesting a state court judge declare that 'Houston Pilots may not perform Bolivar Roads Jobs.' Dkt. 1-2 at ¶ 20.d." Dkt. 17 at 11; *see also* Dkt. 17 at 12 ("To resolve [GalTex]'s state law claims, it is necessary to resolve . . . a federal issue regarding federal pilotage in a federally created and administered anchorage."). GalTex retorts that Houston Pilots' federal pilotage rights are not implicated by GalTex's suit because "[t]he sole issue is whether . . . Houston Pilots can perform *compulsory* pilotage to the Bolivar Road anchorage." Dkt. 19 at 4.

The issue boils down to this: what are "Bolivar Roads Jobs"? If "Bolivar Roads Jobs" refers only to compulsory pilotage services under the Texas Transportation Code, then there is no federal question. But if "Bolivar Roads Jobs" refers to any pilotage in the Bolivar Roads Anchorage—including those coastwise vessels exempt from state regulation—then there is a colorable argument that GalTex's well-pleaded complaint raises a substantial federal question.

With its more definite statement, GalTex has made clear that "[c]oastwise trading vessels are excluded from the declaratory relief requested in the State Court petition." Dkt. 23 at 3. Thus, nothing about GalTex's requested relief touches upon Houston Pilots' pilotage rights under their federal pilot licenses. In an attempt to avoid this obvious result, Houston Pilots has proffered the declaration of its Presiding Officer, Captain Clint Winegar, who gives his own competing definition of what constitutes a "Bolivar Roads Job" based on his 30 years of

experience in the maritime industry. *See* Dkt. 24-1 at 3. Captain Winegar's declaration is meaningless because Captain Winegar is not the master of GalTex's complaint. "[T]he plaintiff is the master of the complaint." *Caterpillar*, 482 U.S. at 398–99. "[A] *defendant* cannot, merely by injecting a federal question . . . , transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing." *Id.* at 399.

GalTex's "control over [whether its claims establish the basis for a federal court's subject-matter jurisdiction] extends beyond the time [its] first complaint is filed." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025). If there were any doubt that GalTex "does not seek any sort of determination of a federal right," Dkt. 19 at 4, GalTex—the master of its complaint—has removed all such doubt by "definitively" stating that its "request for declaratory relief excludes exempt coastwise trading vessels." Dkt. 23 at 3. This more definite statement clarifies that the relief GalTex seeks is "outside a federal court's jurisdiction." *Wullschleger*, 604 U.S. at 36.

That the Bolivar Roads Anchorage is "federally created and administered" is of no moment. Dkt. 17 at 12. Yes, the federally appointed Captain of the Port Houston-Galveston is responsible for granting *permission* to anchor, but the federal regulation is silent as to which type of licensed pilot must accomplish said anchoring. *See* 33 C.F.R. § 110.197(b)(2). By the plain language of its creation, the Bolivar Roads Anchorage is within the Galveston Harbor. *See* 33 C.F.R. § 110.197 ("Galveston Harbor, Bolivar Roads Channel, Texas"). The federal government has left it to the states to regulate pilotage within their "bays, rivers, *harbors*, and ports." 46 U.S.C. § 8501(a) (emphasis added). Because the Bolivar Roads Anchorage is within Galveston Harbor, and Texas alone regulates compulsory pilotage in Galveston Harbor, there is no substantial federal question here. The only question raised by GalTex's lawsuit is one of Texas statutory interpretation:

whether the Bolivar Roads Anchorage is a Galveston Port under the Texas Transportation Code. That is best left to a Texas state court to decide.

### B. ADMIRALTY OR MARITIME JURISDICTION

It is the removing party's burden to establish the basis for federal jurisdiction. In both their notice of removal and their response to the motion to remand, Houston Pilots make the conclusory assertion that this case falls within this court's admiralty or maritime jurisdiction, yet they never state why. At oral argument, Houston Pilots' counsel first took the position that because this case involves the pilotage of ships on navigable waters, it necessarily falls within this court's admiralty or maritime jurisdiction. Later, Houston Pilots' counsel asserted that trespass and money had and received are maritime torts—arguments that appear nowhere in Houston Pilots' notice of removal or response to GalTex's motion to remand. I will assume, without deciding, that this case falls within this court's admiralty or maritime jurisdiction. That makes no difference, however, because admiralty or maritime jurisdiction, standing alone, is not an independent basis for removal.[2]

For more than 220 years, it was settled law that admiralty claims were not removable from state court without an independent basis for removal. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 359–80 (1959) (holding that, although maritime claims are within federal courts' original jurisdiction, they are not removable on that basis); *In re Dutile*, 935 F.2d at 63 ("[A]dmiralty and maritime claims may be removed to federal court only by non-forum defendants

[2] Nor is Houston Pilots' *in rem* counterclaim, which is "within the *exclusive* admiralty jurisdiction of the federal courts," a basis for removal. *In re Dutile*, 935 F.2d 61, 62–63 (5th Cir. 1991). If, as in *Dutile*, a plaintiff's own *in rem* claims are not removable, then certainly Houston Pilots' *in rem* counterclaims, filed *after* removal, are not grounds for removal. *See Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 442 (2019) ("Section 1441(a) thus does not permit removal based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action."); *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Federal jurisdiction cannot be predicated . . . upon an actual or anticipated counterclaim.").

and only where there is complete diversity of citizenship."). When Congress amended the removal statute in 2011, removing defendants began to argue that the changes to § 1441(b) functioned as congressional rejection of hundreds of years of precedent holding that maritime claims cannot be removed absent some other basis for federal jurisdiction. For a detailed explanation of this argument, *see Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772, 774–78 (S.D. Tex. 2013). Plaintiffs have countered by arguing that, notwithstanding the 2011 amendments, lawsuits sounding in admiralty "are exempt from removal by the 'saving-to-suitors' clause of [28 U.S.C. § 1333], and therefore may only be removed when original jurisdiction is based on another jurisdictional grant, such as diversity of citizenship." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 219 (5th Cir. 2013).

The Fifth Circuit's preceding statement in *Barker*—which clearly cuts against permitting removal here—is the most definitive statement it has made on the issue. But that statement was not "necessary to the result" in *Barker* and is thus dictum. *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (quotation omitted). The Fifth Circuit has never decided this issue, despite repeatedly acknowledging a lack of clarity:

> [T]he question of subject-matter jurisdiction presented in this case—whether the saving-to-suitors clause of the federal maritime statute prohibits removal of general maritime claims absent an independent basis for federal jurisdiction in light of Congress's December 2011 amendment to the federal removal statute—is not clear. The vast majority of district courts considering this question have maintained that such lawsuits are not removable. . . . However, because there is no binding precedent from this circuit, . . . there remains a consequential number of district courts that have held to the contrary. . . . This disagreement, lopsided as it might be, highlights the conceptual difficulty of and uncertainty surrounding the issue.

*Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018); *see also In re N&W Marine Towing, L.L.C.*, 90 F.4th 724, 733 n.9 (5th Cir. 2024) (declining to answer the question of whether maritime cases brought in state court

are exempt from removal by the saving-to-suitors clause, despite acknowledging "the lack of clarity on this point").

Despite the lack of clarity on this point, a few things are true. First, "[s]tatutes which invade the common law or the general maritime law are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952). In other words, "Congress does not hide elephants in mouseholes." *Thomas v. Reeves*, 961 F.3d 800, 802 (5th Cir. 2020) (Costa, J., concurring) (citation modified). Second, it has been the law for more than 220 years that "[p]arties in maritime cases are not compelled to proceed in the admiralty at all, as they may resort to their common-law remedy in the State courts, or in the Circuit Court, if the party seeking redress and the other party are citizens of different States." *Romero*, 358 U.S. at 370 (citation modified). Such a "considerable inroad[] into the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters" is quite the elephant. *Id.* at 372. Third, because "removal jurisdiction raises significant federalism concerns," doubts about removal must be strictly construed in favor of remand. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Fourth, "there is no binding precedent from [the Fifth Circuit]" that removal is proper in this situation. *Sangha*, 882 F.3d at 100. Fifth and finally, the notion that suits sounding in admiralty are independently removable is the *minority* view. *See id.*

In the absence of clear Congressional intent, binding precedent, or even dicta that renders the saving-to-suitors clause toothless by upending more than two centuries of concurrent federal–state jurisdiction in admiralty matters, and considering that doubts about removal should be construed in favor of remand, I will side with "[t]he vast majority of district courts considering this question" and conclude that, "absent an independent basis for federal jurisdiction," this lawsuit is "not removable." *Id.* Because the parties are not diverse and Houston Pilots has pointed to no independent basis for removal, this case should be remanded.

## CONCLUSION

For the reasons discussed above, I find that this court lacks subject matter jurisdiction to entertain this dispute. Accordingly, I recommend the motion to remand (Dkt. 4) be granted and this matter remanded to the 122nd District Court of Galveston County.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 31st day of July 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE